[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO OPEN AND MODIFY P.J., DATED MARCH 10, 2000 PLAINTIFF'S MOTION FOR CONTEMPT, DATED MARCH 30, 2000 PLAINTIFF'S MOTION FOR APPOINTMENT OF AN ATTORNEY FOR THE MINOR CHILD P.J., DATED MARCH 30, 2000 PLAINTIFF'S MOTION TO MODIFY SUPPORT P.J., DATED MARCH 30, 2000 PLAINTIFF'S MOTION TO DISMISS, DATED MAY 11, 2000 AND PLAINTIFF'S MOTION TO MODIFY SUPPORT P.J., DATED JULY 17, 2000
In the first instance, reference is made to a certain judgment dated April ii, 1996 by and between the plaintiff Donna Hart and the defendant Eric P. Hart, which judgment was rendered and entered by Teller, J., on the above-noted date. The judgment speaks for itself.
The plaintiff and the defendant and their respective counsel appeared before the court on October 3, 2000 as concerns a variety of motions and were heard. CT Page 12609
The defendant Eric Hart is age 48. He describes his health as fairly good.
The defendant testified that his son Jeffrey P. Hart, who was born September 10, 1982, has resided with him for some time and attained his majority; to wit, age 18, on September 10, 2000.
The son Jeffrey had been living with his father at the time that the March 10, 2000 motion was filed. The other child of the parties Sharon A. Hart, born April 27, 1988, is now age 12 and the current arrangement as understood by the court is to the effect that the daughter Sharon resides for one week with the plaintiff and the following week with the defendant, and that is a situation which has continued for some time.
The defendant testified that even after his son was with him that he had for a time continued to pay the $50.00 support attributable to the boy and even though the daughter Sharon had been residing with him on a part-time basis as noted above.
The defendant has worked part time in addition to his regular job at an entity known as the Lion's Den as an instructor in painting.
The defendant has not remarried and has continued with his employment with Wyman Gordon.
The defendant testified that the son Jeffrey, who as indicated has now attained his majority, has resided with him for the last three years.
Apparently in February of 2000 the defendant stopped making the support payments with regard to the daughter Sharon because of the split informal custodial arrangement.
The defendant's hourly rate incident to his employment at Wyman Gordon is $13.79 plus time and a half if he works overtime.
The plaintiff Donna Hart is not presently employed. She is receiving unemployment compensation from the State of Rhode Island. She formerly worked at a facility known as Brightwood where she did furniture refinishing and worked on a 40-hour basis, only on occasion receiving any overtime.
On July 20, 2000 the plaintiff left her position and terminated her employment claiming harassment by her employer. The plaintiff testified that she has looked for other suitable employment since that time.
CT Page 12610 The plaintiff testified that after the dissolution of April 11, 1996, she sold the timeshare asset that she had in North Carolina for about $19,000.00.
At the time that the son Jeffrey went to reside permanently with the defendant, the plaintiff at that point in time was employed by an entity known as The Woodpecker.
The plaintiff testified that one of the causes also of her leaving her employment in Rhode Island was an arbitrary reduction in her hourly rate by her employer from $13.00 an hour to $11.00 an hour.
Reference was made to the plaintiffs acquaintance with a gentleman by the name of Landrini who resided with her for a time in the past, left Connecticut, but has since returned and is residing with her at the present time.
No testimony was offered as concerns what contribution, if any, Mr. Landrini may be making to the plaintiffs present home and residence.
From the respective financial affidavits of the parties, as concerns the plaintiff, the court notes that her gross weekly income from unemployment is $296.00, deductions in the amount of $55.00 for a net of $241.00.
In addition the plaintiff shows the $50.00 being received for the support of the minor child Sharon. The plaintiff shows expenses of $467.44, shows a debt to an entity or an individual known as Diroma in the amount of $7,800.00.
The plaintiff shows her residence at 131 Moxley Road, Uncasville, valued at $120,000.00 with a 100% equity.
The plaintiff shows a lot, Soundview Drive in North Carolina, valued at $11,000.00, with a 100% equity. it may be that this property, Soundview Drive, was the asset sold referred to in the testimony.
The plaintiff has a 1991 Toyota automobile free and clear and bank accounts totaling $4,392.00.
The defendant's financial affidavit reflects that he continues to be employed as a maintenance mechanic at Wyman Gordon where he has been for a number of years, weekly gross of $572.80, which is somewhat more than was the case at the time of the dissolution, same employer, net weekly wage of $398.00, $15.00 a week shown as casual income from instruction in the art of painting, weekly expenses of $660.42 and a debt of $6,500.00 CT Page 12611 primarily to his parents.
The defendant shows his home and residence of 121 B Kitemaug Road, Uncasville, valued at $115,000.00, with a mortgage of $26,000.00, for an equity of $80,000.00. He has a 1994 Chevrolet pickup valued at $15,000.00, 100% equity, $30.00 in a savings account, $1,800.00 held in a Citizen's Bank account apparently belonging to his minor son and an interest in approximately $5,000.00 in a 401K plan incident to his employment.
The plaintiffs income at the time of her Rhode Island employment, where it is her claim that she was harassed, was in the nature of $507.00 gross weekly, with a net of approximately $389.00.
As indicated, the plaintiff represents that she is presently seeking employment, what the plaintiffs intentions are with regard to her claim of harassment as to a former employer is a matter of conjecture.
The son Jeffrey has now attained his majority and is out of the picture so to speak insofar as the financial issues are concerned. of course the court proceeds on the premise that the parents will continue to do what they can to further the young man's education.
It would appear that the custodial arrangement has continued to the date hereof with regard to the daughter Sharon being one week with the plaintiff and one week with the defendant.
All things considered, the original orders as contained in the judgment by Teller, J., as to support were relatively modest.
The defendant's Motion to Open and Modify, P.J., dated March 10, 2000 is denied.
The plaintiffs Motion for Contempt is understandable in one respect in that the defendant may have been confused with regard to the situation that existed. The court feels that it was not a willful course of conduct and the court has not seen any evidence that the defendant is not willing to cure any deficiency that may exist on the basis of Judge Teller's order. The Motion for Contempt dated March 30, 2000 is denied.
The plaintiffs Motion for Appointment of An Attorney for the Minor Child, P.J., dated March 30, 2000 was apparently never acted upon and no attorney was appointed as best the court can divine with regard to the child Sharon.
The plaintiffs Motion to Modify Support, P.J., dated March 30, 2000 CT Page 12612 claiming a substantial change in circumstances due to overtime on a second teaching job does not appear to be warranted on the basis of what has been presented to the court. It is true that the defendant's income was $482.00 gross at the time of the dissolution and is now $572.80, but mindful of the present custodial arrangement, the existing order may continue.
As to the plaintiffs Motion to Dismiss, dated May 11, 2000 and the objection posed thereto of May 25, 2000, while it is true that clear, specific words were not used with regard to the exact nature of the change in circumstances, this court having earlier herein acted on the Motion to Open and Modify, P.J., of March 10, 2000 feels that it's a moot point.
The plaintiffs Motion to Modify Support, P.J., dated July 17, 2000 is apparently predicated primarily on the plaintiffs present state of unemployment. It would appear that the plaintiff was not fired from her former position; admittedly, may have been influenced by claims of harassment, what steps the plaintiff might have taken with regard to trying to see that that was cured and ended is not reflected in the testimony presented to the court.
While the court understands the effect that the claimed harassment may have had on the plaintiff, it may well be that other avenues of solving that problem could have been properly addressed.
In the event that the plaintiffs unemployment should continue for any further substantial period of time, the Motion to Modify as to support for the remaining child Sharon may be readdressed.
The court enters no orders as to attorney's fees. Each shall be responsible for their own.
From the testimony it would appear that the defendant owes the plaintiff $600.00 in back support as concerns the daughter Sharon.
This amount may be liquidated and discharged at the rate of $25.00 per week until paid. The $50.00 weekly regular support order as concerns the child Sharon shall continue.
JTR Austin CT Page 12613